615 F.Supp. 37 (1985)
FALCON PRODUCTS, INC., et al., Plaintiffs,
v.
The INSURANCE COMPANY OF the STATE OF PENNSYLVANIA, Defendant.
No. 84-2477C(B).
United States District Court, E.D. Missouri, E.D.
July 12, 1985.
Paul Schramm, Schramm, Pines & Spewak, St. Louis, Mo., for plaintiffs.
Eugene Wollan, Rein, Mound & Cotton, New York City, Joseph H. Mueller (local counsel), Moser, Marsalek, Carpenter, Cleary, Jaeckel & Keaney, St. Louis, Mo., for defendant.

MEMORANDUM AND ORDER
REGAN, Senior District Judge.
This action was brought by Falcon Products, the named insured, and then the sole plaintiff, alleging that defendant issued its policy of Difference in Conditions property insurance whereby defendant insured plaintiff against all risks of direct physical loss or damage to personal property owned or as may be acquired by it while on premises occupied by plaintiff in Mexico; that thereafter, personal property of plaintiff or in its custody "was lost, damaged and destroyed by a fortuitous external cause, bombardment by radiation introduced into plaintiff's premises without its knowledge or consent."
Subsequently, Falcon de Juarez was added as a party plaintiff upon the representation that it was Falcon de Juarez, a wholly owned subsidiary of Falcon Products, *38 which actually sustained the alleged losses and so is the real party in interest. The amended complaint alleges the claim in virtually the same language as the original, except to allege in Count I that the policy was purchased by Falcon Products as agent for its Mexican subsidiary. Count III is also rescript of the original complaint except for the allegation that the property allegedly lost or damaged was owned or in the custody of Falcon de Juarez, and that as a direct result of the radiation bombardment Falcon de Juarez and Falcon Products (the latter by reason of its 100% ownership of its subsidiary) sustained the alleged losses.[1] For determination are plaintiffs' motion for summary judgment on Counts I and III and defendant's cross-motion for summary judgment.
Falcon Products, Inc., a Delaware corporation with its principal place of business in Missouri, manufactures and sells, inter alia, tables and components thereof for use in the food industry. It also distributes tables and components thereof manufactured by its wholly owned Mexican subsidiary, Falcon de Juarez, a Mexican corporation.
The following facts are not in dispute. On December 6, 1983, Yonke Fenix, a Juarez scrap dealer, purchased parts of a medical teletherapy unit. The unit contained some 6,000 pellets of Cobalt-60 housed in a capsule in its head. Cobalt-60 is a radioactive metal, manufactured by bombarding ordinary cobalt with neutrons in an atomic reactor. During the delivery of the unit's parts to the scrap yard, the capsule housing the pellets ruptured, contaminating the scrap metal, the delivery truck and the streets. At the scrap yard, loose pellets of Cobalt-60 were scattered about, contaminating the dealer's scrap metal, including that which the dealer subsequently sold and delivered to Falcon de Juarez between December 6, 1983 and January 20, 1984.
Beginning December 10, 1983, Falcon de Juarez melted the contaminated scrap in its foundry and formed the resulting product into table base castings. These contaminated table bases were sold to the parent company, Falcon Products, and many of them were resold to customers of Falcon Products before the plaintiffs became aware of the facts. In their irradiated condition, these table bases were unusuable for the purposes intended and were retrieved and disposed of. As the result, plaintiffs incurred substantial expenses and sustained losses which are the subject of their claims against defendant under the policy. Defendant denied the claims.
The insurance policy, first issued in August, 1982 and renewed for the period from November 1, 1983 through November 1, 1985, named Falcon Products as insured and covered Falcon Products in most countries, including Mexico, but excluding the United States. To the extent relevant the property covered by the policy was "(t)he interest of the insured in personal property owned or (thereafter) acquired, all while on premises owned, leased or occupied by the insured," together with its interest in personal property of others in the insured's custody. Perils insured against were defined in the policy as follows:
"This policy insures against all risks of direct physical loss or damage to the property covered hereunder from any external cause ... except as herein excluded and subject to all other provisions of the policy."
Among the perils excluded were loss or damage caused by or resulting from "faulty materials", "inherent vice", "latent defect" and "contamination." The policy also contained a Nuclear Exclusion Clause.
That the scrap metal purchased by Falcon de Juarez from Yonke Fenix had theretofore been "contaminated" (as that term is commonly understood) is undeniable, with the result that the metal into which the scrap metal was melted and manufactured by Falcon de Juarez into the table bases sold to Falcon Products was also contaminated. *39 Plaintiff concedes that in common understanding "contamination" connotes a condition of impurity resulting from mixture or contact with a foreign substance. Plaintiff further concedes that "plaintiffs' loss herein was the result of an impurity resulting from the scrap metal's contact with Cobalt 60, a radioactive (foreign) substance." They contend, however, that plaintiffs' loss was not the proximate result of "contamination" as that term is used in the policy.
It is plaintiffs' position that the proximate or "efficient physical" cause of their loss was "the negligent conduct of those persons who broached the sealed capsule in which the Cobalt-60 pellets were kept." In so arguing, plaintiffs overlook the decisive fact that the "negligent conduct" and the resultant contamination occurred prior to the time Falcon de Juarez acquired the scrap metal. That is, the metal was contaminated by Cobalt-60 before title thereto passed to Falcon.
As noted supra, the policy provided insurance (subject to exclusions) only against all risks of direct physical loss or damage to property covered thereunder, namely, the interest of Falcon in property owned or in Falcon's custody on Falcon's premises at the time of the loss. It follows as a matter of law and fact that irrespective of what or who caused the scrap metal to be contaminated, plaintiffs could not have sustained an insurable loss based on negligent conduct of third persons which occurred on premises in which Falcon had no interest and which resulted in contaminating property in which Falcon then had no interest whatever.
Plaintiffs further contend that when the policy is read as a whole, the contamination exclusion does not apply to contamination resulting from contact with a radioactive substance other than nuclear fuel or nuclear waste. They argue that inasmuch as the Nuclear Exclusion Clause expressly excludes from coverage, inter alia, loss or damage caused by contamination by radioactivity from any nuclear fuel or from nuclear waste from the combustion of nuclear fuel, the intended effect is to modify and limit the scope of the general exclusion clause by extending coverage to losses caused by contamination by radiation from other than nuclear fuel sources, even though the property was already contaminated when acquired and the loss was certain to occur. No such intent is here manifested.
Over and beyond the foregoing, we believe that the exclusion of losses caused by faulty materials is also here applicable. Although plaintiffs concede that under the dictionary definition and common understanding, the scrap metal utilized by Falcon de Juarez may have been "faulty material", they contend that if material is rendered faulty by reason of contamination, only the contaminated exclusion (as they construe it) would apply. This is a non-sequitur. If material is faulty, the cause thereof is irrelevant.
Under any view of the facts, neither plaintiff sustained a loss within the coverage of the policy. We add that the amended complaint contains no allegation supportive of the right of Falcon Products to recover under the policy. Therein it is alleged that Falcon de Juarez sustained a property loss and incurred additional expenses related thereto and that Falcon Products is entitled to recover therefor solely by virtue of its one hundred percent ownership interest in Falcon de Juarez (which is a separate entity).
Summary judgment for defendant is appropriate. Accordingly, plaintiffs' motion for partial summary judgment should be and is HEREBY OVERRULED, and defendant's motion for summary judgment should be and it is HEREBY SUSTAINED. Judgment will be entered in accordance herewith.
NOTES
[1] Counts II (for Falcon de Juarez) and III seek additional damages for the alleged vexatious refusal of defendant to pay the claim.